UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| LANCE WALTERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-00458-JPH-DLP |
| | ) | |
| DAVID BETHEL, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT, DISMISSING
CERTAIN DEFENDANTS, AND DIRECTING PLAINTIFF TO SHOW CAUSE**

In this civil rights action, Lance Walters brings claims against agents of the Indiana

Department of Correction (IDOC) and its medical services contractor, Wexford of Indiana, LLC.

Three medical defendants seek summary judgment on grounds that Mr. Walters failed to exhaust

administrative remedies before filing his complaint.

Because the undisputed facts show that Mr. Walters did not exhaust administrative

remedies regarding his health-care related claims, the Court grants the motion and dismisses claims

against these defendants. The Court also directs Mr. Walters to show cause why summary

judgment should not be granted to a fourth medical defendant who has not yet appeared.

**I. Summary Judgment Standard**

Summary judgment should be granted "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty

Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find

for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there

is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007). The Court views the facts in the light most favorable to the non-moving party, and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

In accordance with Local Rule 56-1(f), the Court assumes that facts properly supported by the movant are admitted without controversy, unless the nonmovant specifically disputes them. Likewise, the Court assumes that facts asserted by the non-movant are true so long as they are supported by admissible evidence. S.D. Ind. L.R. 56-1(f)(2).

## II. Background

### A. Mr. Walters' Claims

Mr. Walters alleges that he was threatened, bullied, and later attacked by his cellmate at the IDOC's Reception Diagnostic Center (RDC). He further alleges that prison staff at Putnamville Correctional Facility (PCF) failed to protect him, which resulted in Mr. Walters being attacked again by the same inmate and sexually assaulted by another inmate. Third, Mr. Walters alleges that after these attacks, the PCF staff interfered with his ability to obtain medical treatment for his injuries. Although Dr. Pablo Perez eventually examined Mr. Walters, he allegedly deliberately ignored injuries to Mr. Walters' genitals and anus and exacerbated pain from those injuries by performing prostate exams. Last, Mr. Walters alleges that Nurse Practitioner Cheryl Petty, Medical Services Administrator Ryan Schnarr, and Mental Health Professional Kurt Moehle refused or ignored Mr. Walters' requests for help.

The Court's screening order identified Eighth Amendment claims against certain IDOC employees who allegedly failed to protect Mr. Walters from his attacks or assist him afterward. Dkt. 22 at 3–4. The screening order also identified Eighth Amendment claims against Dr. Perez, Nurse Petty, Mr. Schnarr, and Mr. Moehle (the "Medical Defendants"). *Id.* The sole issue

presented by the Medical Defendants' motion for summary judgment is whether Mr. Walters exhausted all available administrative remedies with respect to his claims against them before he filed his complaint.[1]

### B. Facts

At all times relevant to the Complaint, the IDOC maintained an Offender Grievance Process ("OGP"). Dkt. 53-3. The OGP identifies issues that are subject to the grievance process and those that are not. *Id.* at § IV(A) and (B). Issues related to medical care are not included on the list of examples of "non-grievable issues." *Id.* at § IV (B).

To exhaust the remedies available through the OGP, an inmate must complete four steps: attempted informal resolution; filing a formal grievance; appeal to the Warden/designee; and appeal to the Department Offender Grievance Manager. *Id.* at §§ X–XIII. Formal grievances are either accepted and logged or rejected. *Id.* at § XI(B).

Mr. Walters' familiarity with the OGP is evident from his record of having availed himself of the grievance process for other issues, including medical treatment for lupus (dkt. 53-2 at 4–10, 11–12, 24, 27–28, 32–34, 40–42, 45–46, 49–51, 55–56), calculation of earned credit time (*id.* at 25–26, 52–54), deduction of funds from his inmate trust account (*id.* at 47–48), issues related to legal mail and law library access (*id.* at 14–15, 17–18, 20, 22, 28–31, 35–39), and handling of grievances (*id.* at 1–3, 13, 16, 19, 21, 23).

---

[1] To date, the Court has not succeeded in issuing process to Mr. Moehle. Nevertheless, because Mr. Walters' claims against all four Medical Defendants are based on the same allegations, the Court also considers whether Mr. Moehle is entitled to summary judgment. *See Malak v. Associated Physicians, Inc.,* 784 F.2d 277, 280 (7th Cir. 1986) ("[W]here one defendant files a motion for summary judgment which the court grants, the district court may *sua sponte* enter summary judgment in favor of additional non-moving defendants if the motion raised by the first defendant is equally effective in barring the claim against the other defendants and the plaintiff had an adequate opportunity to argue in opposition to the motion.").

Mr. Walters filed one grievance related to claims in this action. *Id.* at 43–44. On August 19, 2019, Mr. Walters filed a grievance stating that he should be separated from the two inmates who eventually assaulted him at PCF. *Id.* at 45. He requested a transfer to a different prison. *Id.* at 44. This grievance did not allege that Mr. Walters had been sexually assaulted or discuss medical treatment for injuries sustained in a sexual assault. While Mr. Walters argues that he satisfied the exhaustion requirement through other actions, it is undisputed that he filed only one grievance relating to the facts alleged in this case and that it does not relate to medical care.

### III. Discussion

#### A.  Exhaustion Standard

The substantive law applicable to this motion for summary judgment is the Prison Litigation Reform Act ("PLRA"), which requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps

prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004).

### B.  Mr. Walters' Available Administrative Remedies

Medical Defendants argue they are entitled to summary judgment because the undisputed facts show that Mr. Walters did not complete the grievance process and thus failed to exhaust all available administrative remedies as required by the PLRA. Dkt. 52 at 2. The "purpose[] of exhaustion under the PLRA" is to give the prison "an opportunity to correct its own mistakes before suit is filed against it in federal court." *Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020) (citing *Woodford*, 548 U.S. at 89). "All the grievance need to do is object intelligibly to some asserted shortcoming" to "alert the prison to the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002).

Here, Medical Defendants have designated evidence that before filing his complaint, Mr. Walters did not file a grievance notifying the prison staff that he was dissatisfied with the medical care he received (or did not receive) after his sexual assault. Dkt. 53-1 at ¶¶ 22, 23. Mr. Walters has not offered contrary evidence, so the Court treats the Medical Defendants' assertions as admitted without controversy. S.D. Ind. L.R. 56-1(f).

In response to the motion for summary judgment, Mr. Walters argues that Grievance Specialist Chris Williams informed him that he could not use the OGP to raise concerns about being separated from specific inmates or about being sexually assaulted. Dkt. 56-1 at 1. Mr. Walters has presented a letter or grievance appeal which states, "I've spoken to mental health, staff, and medical doctor Pablo Perez who continues to do prostate exams that are very painful because of my" sexual assault. *Id.* at 6. However, this document is dated August 28, 2020—nearly a year after Mr. Walters filed his complaint. Post-filing exhaustion of administrative remedies does not

establish compliance with the PLRA. *See Ford,* 362 F.3d at 397 ("Section 1997e(a) says that exhaustion must precede litigation. . . . [T]hese rules routinely are enforced . . . by dismissing a suit that begins too soon, even if the plaintiff exhausts his administrative remedies while the litigation is pending.").

Additionally, Mr. Walters states that he "did grieve the topic of this lawsuit which was that there should have been a sepratee in place and against two seperate individuals, and that did not happen, and the Plaintiff suffered injury as a result on multiple occasions." Dkt. 58 at ¶ 8. Mr. Walters also states that he "placed requests to the medical staff via Health Care Request Form" after his sexual assault. *Id.* at ¶ 10. However, he does not allege that he submitted grievances through the OGP regarding the medical care that was or was not provided following his assault, and these arguments are not related to the question of whether he was denied medical treatment following his sexual assault. *See, e.g.*, *Schillinger*, 954 F.3d at 996 ("[T]here are no allegations that any prison guards—even unnamed guards—had reason to know in advance that an attack might occur and failed to take appropriate measures to prevent it. . . . Instead, Schillinger's grievance raised two entirely different problems: no guards were nearby when the attack occurred, and the responding guards took too long to come to his aid."); *Northern v. Dobbert*, 816 F. App'x 11, 14 (7th Cir. 2020) ("[T]he allegations in the August complaint were insufficient to put the prison on notice that Northern sought redress for inadequate care of his post-surgical wound. . . . Northern's four-page complaint mentioned wound care only once and only to note that, in an act of retaliation for not signing a refusal-of-care form, a nurse did not change his surgical dressings on two days in May 2013.").

Mr. Walters' assertion that he "placed requests to the medical staff via Health Care Request Form" after his sexual assault, dkt. 58 at ¶ 10, does not change the outcome. Mr. Walters was

required to "take all steps prescribed by the prison's grievance system," *Ford,* 362 F.3d at 397, and comply with the OGP's "deadlines and other critical procedural rules," *Woodford,* 548 U.S. at 90-91. The OGP offered Mr. Walters a pathway to administrative relief for all matters related to "[a]ctions of individual staff, contractors, or volunteers" and "concerns relating to conditions of care." Dkt. 53-3. at § IV(A). Regardless of whether he also submitted Health Care Request Forms, the PLRA required Mr. Walters to utilize the OGP.

Mr. Walters' responses may be relevant to the question of whether he exhausted administrative remedies regarding the prison staff's failure to protect him from attacks by other inmates. But those claims are not proceeding against the Medical Defendants. As a result, they are entitled to summary judgment.

### IV. Conclusion and Further Proceedings

The Medical Defendants' motion for summary judgment, dkt. [51], is **granted**. All claims against Defendants Perez, Petty, and Schnarr are **dismissed without prejudice**. No partial final judgment shall enter. However, the **clerk is directed** to terminate defendants Perez, Petty, and Schnarr as defendants.

The fourth medical defendant, Kurt Moehle, has not appeared in the action and therefore did not join in the motion for summary judgment. However, the same rationale discussed in Part III would apply to Mr. Walters' claim against Mr. Moehle. Mr. Walters shall have **through January 4, 2021**, to **show cause** why the Court should not also dismiss claims against Mr. Moehele without prejudice for the reasons discussed in Part III. *See* Fed. R. Civ. P. 56(f) (allowing court to grant summary judgment to a nonmovant after giving notice and an opportunity to respond); *Malak*, 784 F.2d at 280 ("[T]he district court may *sua sponte* enter summary judgment in favor of additional non-moving defendants if the motion raised by the first defendant is equally

effective in barring the claim against the other defendants and the plaintiff had an adequate opportunity to argue in opposition to the motion.").

**SO ORDERED.**

Date: 12/10/2020

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

LANCE WALTERS
103746
WESTVILLE - CF
WESTVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All Electronically Registered Counsel